## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**TROY GREENUP**                                    **CIVIL ACTION**

**VERSUS**                                          **NO.  17-4185**

**BURL CAIN, WARDEN**                               **SECTION "A"(4)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.    Factual Background

The petitioner, Troy Greenup ("Greenup"), is a convicted inmate incarcerated in the Louisiana State Penitentiary, in Angola, Louisiana.[2]  On June 9, 2011, Greenup was indicted by a Grand Jury in Jefferson Parish for one count of aggravated rape upon a known juvenile (D/O/B 11/25/1997) who was under thirteen years of age by anal intercourse and/or oral copulation.[3]  Greenup entered a plea of not guilty in the case.[4]

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. 3, p. 18.

[3]St. Rec. Vol. 7 of 15, Bill of Indictment, 6/9/11.

[4]St. Rec. Vol. 7 of 15, Minute Entry, 6/10/11.

The record reflects that the victim, D.B.,[5] was born in 1997 and was fourteen years old at the time of trial.[6]  D.B. testified that on multiple occasions when he was between the ages of three and five years old, Greenup, his father, used his penis to penetrate D.B.'s mouth and "butt."  These acts started while D.B. and his parents were living in Westwego in an apartment on Tanglewood Street and continued after they moved to a residence on Avenue D.  The acts stopped when D.B. and his mother stopped living with Greenup.  D.B. did not tell anyone about the acts until September 2010 when his mother asked him if Greenup "molested" him.

According to D.B.'s mother, she, D.B., and Greenup began living together at the Tanglewood apartment complex in Westwego in May 2000.  Around 2002 or 2003, after her second and third children were born, the family moved to a house on Avenue D.  Later in 2003 or 2004, D.B's mother ended her relationship with Greenup and she and her children moved in with her parents.

D.B.'s mother testified that in mid–2010 she received a phone call from someone who asked her to testify on Greenup's behalf in an unrelated matter.  D.B.'s mother prayed on the matter and, in September 2010, asked D.B. whether Greenup had ever "touched him wrong."  When D.B. responded "yes," D.B.'s mother asked him questions to determine the specific acts Greenup committed.  D.B. told his mother that the acts occurred while she was at work when they lived at the Tanglewood apartment.

D.B.'s mother did not report the matter to the police, but sought counseling for D.B. from a clinic in Marrero.  The clinic reported D.B.'s allegations to the Office of Community Services

---

[5] Pursuant to La. Rev. Stat. Ann. § 46:1844(W)(3), the state courts referred to the victim and certain members of his family by their initials. This Court will do the same.

[6] The facts were taken from the published opinion of the Louisiana Fifth Circuit Court of Appeal on direct appeal.  *State v. Greenup*, 123 So. 3d 768 (La. App. 5th Cir. 2013); St. Rec. Vol. 3 of 15, 5th Cir. Opinion, 12-KA-881, 8/27/13.

("OCS" now the Department of Children and Family Services) which investigated the matter. When D.B.'s mother refused to call the police, the OCS investigator did so.

In October 2010, Kay Evans, an OCS investigator, conducted interviews of D.B., his siblings, his mother and Greenup. Evans determined that both the statements of D.B. and his mother were consistent. D.B's siblings all denied any abuse by Greenup. Evans made a finding that abuse of D.B. had occurred and recommended that D.B. and his siblings stay with their mother. According to Evans, Greenup denied the allegations of abuse and also denied ever living with D.B. during the relevant time period.

Upon completion of its investigation, OCS notified the police and D.B. was brought to the Audrey Hepburn Care Center and the Children's Advocacy Center ("CAC") for further investigation. Anne Troy, a forensic nurse practitioner specializing in sexual and physical child abuse, interviewed and examined D.B. on October 16, 2010, at the Audrey Hepburn Care Center at Children's Hospital. D.B. told Troy that he was two or three years old when Greenup forced him to put his mouth on Greenup's penis and Greenup inserted his penis into D.B.'s anus. D.B. told Troy that these acts occurred at the Tanglewood Apartments when D.B.'s mother was at work. Troy's physical examination of D.B. revealed no physical evidence of sexual abuse. Troy explained that the findings were not unusual because the alleged abuse had occurred many years prior to the examination.

On January 18, 2011, Staci Lanza, a forensic interviewer with the Children's Advocacy Center, conducted a recorded interview of D.B. D.B. told Lanza that on multiple occasions when he was three or four years old, Greenup removed D.B.'s clothes and inserted his penis into D.B.'s mouth and "butt." D.B. recalled that the first occasion of abuse occurred on a bed in the living room where both he and Greenup were naked and Greenup inserted his penis into D.B.'s "butt."

D.B. recalled another occasion when Greenup forced D.B. to put his mouth on Greenup's penis. D.B. told Lanza that Greenup also penetrated him orally and anally when he and his mother and Greenup moved to a new residence. A video of Lanza's interview with D.B. was published to the jury.

L.T.'s mother testified that she met Greenup through her boyfriend's cousin in 2009 or 2010 when L.T. was five years old. At that time, Greenup came to her house nearly every afternoon. On occasion, when the adults went outside to smoke, L.T. would be left alone in the house with Greenup for approximately five to ten minutes.

L.T., who was eight years old at the time of trial, testified that Greenup used to visit his house. L.T. testified that Greenup touched his "pee-pee" and that he touched Greenup's "private area" while both of them were clothed. L.T. explained that this occurred one night while he was watching a movie and the other adults were outside. He later told his mother and grandmother about the incident. L.T. gave a recorded interview to the Children's Advocacy Center which was published to the jury.

Bonnie Henderson testified that that Greenup lived with her mother in Marrero his whole life, including during the 2000 through 2002 timeframe. Henderson testified that Greenup had never consistently lived with D.B.'s mother and never lived on Tanglewood, Magnolia Street or Avenue D. Henderson claimed that from 2000 until 2005, Greenup acted as a full-time caregiver to her sick mother.

Greenup was tried by a jury on June 12 through June 14, 2012, and Greenup was found guilty as charged by a vote of 10-2.[7] The Trial Court denied Greenup's motions for new trial and

---

[7]St. Rec. Vol. 7 of 15, Trial Minutes, 6/12/12; Trial Minutes 6/13/12; Trial Minutes, 6/14/12; Verdict, 6/14/12; St. Rec. Vol. 2 of 15, Trial Transcript, 6/13/12; St. Rec. Vol. 3 of 15, Trial Transcript, 6/14/12; St. Rec. Vol. 4 of 15, Closing Arguments and Verdict Transcript, 6/14/12; St. Rec. Vol. 5 of 15, Voir Dire Transcript, 6/12/12; St. Rec. Vol. 6 of 15, Voir Dire Transcript (con't), 6/12/12.

post-judgment verdict of acquittal.[8]  On July 20, 2012, the Trial Court sentenced Greenup to life

imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence.[9]

On direct appeal, Greenup's appellate counsel asserted two errors[10]: (1) the Trial Court

erred in admitting evidence relating to Greenup's alleged past sexual battery of L.T.; and (2) the

Trial Court erred in failing to grant his motion for new trial premised upon the State's prejudicial

rebuttal argument.  On August 27, 2013, the Louisiana Fifth Circuit affirmed the conviction and

sentence finding no merit in the issues raised, but remanded the case to the Trial Court with

instructions to provide Greenup with written notice of his sex offender notification and registration

requirements by using the form set forth in La. Rev. Stat. § 15:543.1.[11]

On September 17, 2013, Greenup filed a pro se writ application with the Louisiana

Supreme Court.[12]  On March 21, 2014, the Louisiana Supreme Court denied Greenup's writ

applications without stated reasons.[13]  His conviction was final under federal law ninety (90) days

later, on June 19, 2014, when he did not file a writ application with the United States Supreme

Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the

---

[8]St. Rec. Vol. 7 of 15, Motion for Post-Verdict Judgment of Acquittal, 7/13/12; Motion for New Trial, 7/13/12; Order 7/20/12; Minute Entry, 7/20/12; St. Rec. Vol. 3 of 15, Sentencing Transcript, 7/20/12.

[9]St. Rec. Vol. 7 of 15, Minute Entry, 7/20/12; St. Rec. Vol. 3 of 15, Sentencing Transcript, 7/20/12.

[10]St. Rec. Vol. 3 of 15, Appeal Brief, 12-KA-0881, 2/20/13.

[11]*State v. Greenup*, 123 So. 3d 768 (La. App. 5th Cir. 2013); St. Rec. Vol. 3 of 15, 5th Cir. Opinion, 12-KA-881, 8/27/13.

[12]La. S. Ct. Writ Application, 13-KO-2300, 9/26/13 (dated 9/17/13).

[13]*State v. Greenup*, 135 So. 3d 617 (La. 2014); St. Rec. Vol. 13 of 15, La. S. Ct. Order, 2013-KO-2300, 3/21/14.

United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup. Ct. Rule 13(1)).

On June 16, 2015, Greenup submitted pro se to the Trial Court an application for post-conviction relief and brief in which he raised the following grounds for relief:[14] (1) ineffective assistance of trial counseling in failing to (a) object to the jury verdict; (b) object to the State's expert witness; and (c) call an expert for the defense; (d) raise an issue of conflict of interest; and (2) ineffective assistance of appellate counsel in failing to raise the issue of conflict of interest on appeal.

After the State filed a response, the Trial Court denied the post-conviction application on August 4, 2015, finding Greenup failed to meet his burden of proof pursuant to La. Code Crim. P. art. 930.2.[15]  Greenup filed a motion to recuse on August 13, 2015.[16]  Also on August 13, 2015, Greenup filed a traverse to the State's response to his application for post-conviction relief and a "Supplement and Amendment to Application for Post Conviction Relief with Motion for Out of Time Appeal" in which Greenup claimed that the record on appeal was incomplete.[17]  On August 24, 2015, Judge Darensburg signed an Order referring the Motion to Recuse to another judge/division of the court.[18]

---

[14]St. Rec. Vol. 8 of 9, Application for Post-Conviction Relief, 6/22/14 (dated 6/16/14).

[15]St. Rec. Vol. 8 of 15, State's Response to Post-Conviction Relief, 7/30/15; Trial Court Order, 8/4/15.

[16]St. Rec. Vol. 8 of 15, Motion to Recuse the Judge, 8/13/15.

[17]St. Rec. Vol. 8 of 15, Traverse to the State's Answer to Petitioner's Application for Post Conviction Relief, 8/13/15;Supplement and Amendment to Application for Post Conviction Relief with Motion for out-Of-Time Appeal, 8/13/15.

[18] St. Rec. Vol. 8 of 15, Motion for the Selection of Judge to Try Motion to Recuse, 8/24/15.

Greenup submitted a writ application with the Louisiana Fifth Circuit seeking review of the Trial Court's August 4, 2015 order denying post-conviction relief and requesting mandamus relief with regard to his pending traverse and supplement and amendment seeking an out-of-time appeal.[19]  On October 22, 2015, the Fifth Circuit found no error in the District Court's lack of action because the District Court could not act upon the August 13, 2015 filings until the motion to recuse was decided and further found no error in the Trial Court's denial of post conviction relief.[20]

Greenup submitted an application for supervisory writs with the Louisiana Supreme Court.[21]  On April 7, 2017, the Louisiana Supreme Court denied writs finding that Greenup failed to show he received ineffective assistance of counsel under the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted the Trial Court's reasons for denying the application.[22]  On April 13, 2017, Greenup filed a motion for rehearing.[23]  On September 6, 2017, the Louisiana Supreme Court did not consider Greenup's request for reconsideration, citing La. S. Ct. Rule IX§ 6, which does not allow reconsideration of a denied writ application.[24]

---

[19]St. Rec. Vol. 11 of 15, 5th Cir. Writ Application, 15-KH-5, 9/1/15.

[20]St. Rec. Vol. 8 of 15, 5th Cir. Order, 15-KH-556, 10/22/15.

[21]St. Rec. Vol. 14 of 15, La. S. Ct. Writ Application, 2015-KH-2128, 11/13/15.

[22]*State ex rel. Greenup v. State*, 215 So. 3d 231 (La. 2017) (per curiam); St. Rec. Vol. 14 of 15, La. S. Ct. Order, 2015-KH-2128, 4/7/17.

[23]St. Rec. Vol. 14 of 15, Motion for Rehearing, 15 KH 2128, 6/14/17 (dated 4/13/17).

[24]*State ex rel. Greenup v. State*, 224 So. 3d 986 (La. 2017) (mem.).

In the interim, the motion to recuse was subsequently transferred to Judge Stephen D. Enright, Jr. in Division "C", and a hearing was held on May 26, 2016, at which Greenup dismissed the motion.[25]  On May 31, 2016, Judge Enright found the motion to recuse moot and transferred the matter back to Judge Darensburg.[26]  On June 13, 2016, Judge Darensburg reviewed the traverse and supplement and amendment and found no reason to disturb his earlier ruling, and, further, found an out-of-time appeal unwarranted.[27]  Greenup did not appeal the ruling.

On July 15, 2016, Greenup filed a motion seeking a transcript of the May 26, 2016 hearing.[28]  The Trial Court denied the motion on July 21, 2016.[29]  On August 11, 2016, Greenup filed a notice of appeal and the Trial Court gave Greenup until September 19, 2016 by which to file a writ application.[30]  On September 19, 2016, Greenup filed a writ application with the Fifth Circuit.[31]  On October 12, 2016, the Fifth Circuit denied the writ application.[32]

On November 7, 2016, Greenup filed a timely writ application with the Louisiana Supreme Court.[33]  On April 7, 2017, the Louisiana Supreme Court denied writs and adopted and made a

---

[25] St. Rec. Vol. 8 of 15, Minute Entry, 5/26/16.

[26] St. Rec. Vol. 8 of 15, Order of Transfer, 5/31/16.

[27] St. Rec. Vol. 8 of 15, Order, 6/13/16.

[28] St. Rec. Vol. 8 of 15, Motion for Transcript of Hearing, 7/20/16 (dated 7/15/16).

[29] St. Rec. Vol. 8 of 15, Order, 7/21/16.

[30] St. Rec. Vol. 8 of 15, Notice of Appeal, 8/16/16 (dated 8/11/16); Order, 8/17/16.

[31] St. Rec. Vol. 12 of 15, 5th Cir. Writ Application, 16-KH-565, 9/26/16 (dated 9/19/16).

[32] St. Rec. Vol. 12 of 15, 5th Cir. Order, 16-KH-565, 10/12/16.

[33] St. Rec. Vol. 15 of 15, La. S. Ct. Writ Application, 16 KH 2025, 11/18/16 (dated 11/11/16).

part thereof the Trial Court's written reasons for denying the motion requesting a transcript of the May 26, 2016 hearing.[34]

## II.  Federal Habeas Petition

On April 27, 2017, Greenup filed a petition for federal habeas corpus relief in which he asserts the following grounds for relief[35]: (1) ineffective assistance of counsel for failing to object to an "anomaly" in the jury verdict; (2) ineffective assistance of counsel for failing to object to the State's expert witness; (3) ineffective assistance of counsel for failing to retain an expert to rebut the State's expert witness; (4) defense counsel failed to subject the prosecution's case to meaningful adversarial testing and had a conflict of interest and the failure to raise the issue on appeal denied him effective assistance of appellate counsel; (5) the Trial Court erred in denying his supplemental claim for an out of time appeal based on an incomplete record; (6) the Trial Court erred in admitting "other crimes" evidence relating to Greenup's alleged sexual battery of L.T.; and (7) his right to a fair trial was violated by the State's use of prejudicial and inflammatory language during its rebuttal argument.

The State filed a response in opposition to the petition asserting that Greenup timely filed his federal petition and exhausted all of the claims.[36]  The State asserts that the claims can be dismissed as meritless.

---

[34] *State ex rel. Greenup v. State*, 215 So. 3d 224 (La. 2017); St. Rec. Vol. 15 of 15, La. S. Ct. Order, 2016-KH-2025, 4/7/17.

[35] Rec. Doc. 3.

[36] Rec. Doc. No. 14.

### III.    <u>General Standards of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[37] applies to this petition, which is deemed filed in this Court on April 27, 2017.[38]  The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and the claims must not be in "procedural default."  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State has not presented any procedural defenses to Greenup's petition, conceding that his claims are exhausted and his petition is timely filed.  The Court's review of the record confirms that the petition was timely filed and most of his claims have been exhausted and none are in procedural default.

---

[37]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[38]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes.  *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of this Court received Greenup's original petition on April 27, 2017, and it was eventually filed on May 12, 2017, when it received the filing fee.  Greenup dated his signature on the original pleadings on April 25, 2017.  However, the petition bears a date-stamp from the Louisiana State Penitentiary indicating that the petition was received by the Legal Programs Department on April 27, 2017 as well as a date stamp that it was scanned and e-filed on April 27, 2017, which is the earliest date appearing in the record on which he could have presented the pleadings to prison officials for filing with a federal court.  The fact that he later paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition.  *See Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even if the filing fee is not paid at time of mailing) (citing *Spotville*, 149 F.3d at 376).

However, a review of the record shows that Greenup did not appeal the denial of his motion for an out of time appeal. The well-established test for exhaustion requires that the substance of the federal habeas claim be fairly presented to the highest state court in a procedurally proper manner. *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)). The Court finds, therefore, that Greenup did not exhaust available state court remedies as to this claim. Nevertheless, because the Court finds the claim to be without merit, it can be addressed without requiring exhaustion. 28 U.S.C. § 2254(b)(2).

## IV.    Standards for a Merits Review

### A. Claims Reviewed by the State Courts

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the Court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable

application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485. The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, __ U.S. __, 134 S. Ct. 1697, 1706-07 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" *White*, 134 S. Ct. at 1706 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it correctly identifies the governing rule but then applies it unreasonably to the facts. *White*, 134 S. Ct. at 1706-07; *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *Id.* " '[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.' " *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford*

*v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### B. Claims not Reviewed on the Merits by the State Courts

The AEDPA's deferential standards of review apply only to claims adjudicated on the merits by the state courts. 28 U.S.C. § 2254(d); *Henderson v. Cockrell*, 333 F.3d 592, 597 (5th Cir. 2003). To the extent Greenup's claims were not considered by (or exhausted in) the state appellate courts, this Court's utilizes the pre-AEDPA de novo standards of review. *Id*., at 598 (citing *Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir. 1998) (applying de novo standard of review to ineffective assistance of counsel claims that were raised in state court, but not adjudicated on the merits)); *see also*, *Carty v. Thaler*, 583 F.3d 244, 253 (5th Cir. 2009).

Therefore, the Court will consider de novo Greenup's claim that the Trial Court erred in denying his motion for out of time appeal, which was not properly exhausted in the state courts, as well as his claim that his counsel failed to subject the prosecution's case to meaningful adversarial review, which was not specifically addressed by the state courts. The Court recognizes

and has utilized the appropriate standard for its review of each of Greenup's claims even if the standard is not specifically reiterated in the following sections of the report.

## V.    Effective Assistance of Counsel (Claim Nos. 1, 2, 3 and 4)

Greenup alleges that he was denied effective assistance of counsel.  He claims his trial counsel failed to object to the "anomaly" in the jury verdict, object to the State's expert witness, and retain an expert witness to rebut the State's expert.  He further claims counsel was ineffective for failing to inform him of a conflict of interest and subject the State's case to meaningful adversarial testing.  He also claims that he was denied effective assistance of appellate counsel for failing to raise the issue of conflict of interest on appeal.

Greenup asserted these arguments in his state application for post-conviction relief.  The Trial Court denied the ineffective assistance of counsel claims.[39]  The Louisiana Fifth Circuit denied the related writ application.[40]  The Louisiana Supreme Court denied relief finding that Greenup had failed to show he received ineffective assistance of counsel under *Strickland* and attached the Trial Court's written reasons for denying the application.[41]

### A.    Standards of Review under *Strickland*

The issue of ineffective assistance of counsel is a mixed question of law and fact.  *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010). The question for this Court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court.

---

[39]St. Rec. Vol. 9 of 9, Trial Court Order, 8/4/15.

[40]St. Rec. Vol. 9 of 9, 5th Cir. Order, 15-KH-556, 10/22/15.

[41]*State ex rel. Greenup v. State,* 215 So. 3d 231 (La. 2017) (per curiam); St. Rec. Vol. 14 of 15, La. S. Ct. Order, 15-KH-2128, 4/7/17.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom. *Strickland*, 466 U.S. at 687. The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (1992). In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Amos v. Scott*, 61 F.3d 333, 348 (1995).

To prevail on the deficiency prong, a petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances. *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009). The reviewing court must "judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *Harrington*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 689). "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell*, 535 U.S. at 702 (citing *Strickland*, 466 U.S. at 689). As a result, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. *Strickland*, 466 U.S. at 689; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th

Cir. 2004) (counsel's " 'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.' ") (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

In order to prove prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010). Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695). In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen*, 563 U.S. at 189 (quoting *Strickland*, 466 U.S. at. 694). This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 562 U.S. at 112. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller*, 200 F.3d at 282 (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 105 (citing *Strickland*, 466 U.S. at 690). The *Harrington* Court

went on to recognize the high level of deference owed to a state court's findings under *Strickland*

in light of AEDPA standards of review:

> The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 105 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) therefore is "doubly deferential."

*Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009)). This Court

must therefore apply the "strong presumption" that counsel's strategy and defense tactics fall

"within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 690; *Moore*

*v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999).

Federal habeas courts presume that trial strategy is objectively reasonable unless clearly

proven otherwise by the petitioner. *Strickland*, 466 U.S. at 689; *Geiger v. Cain*, 540 F.3d 303, 309

(5th Cir. 2008); *Moore*, 194 F.3d at 591. In assessing counsel's performance, a federal habeas

court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the

circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's

perspective at the time of trial. *Strickland*, 466 U.S. at 689; *Neal*, 286 F.3d at 236–37; *Clark v.*

*Johnson*, 227 F.3d 273, 282–83 (5th Cir. 2000). Tactical decisions when supported by the

circumstances are objectively reasonable and do not amount to unconstitutionally deficient

performance. *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999) (citing *Rector v. Johnson*, 120

F.3d 551, 564 (5th Cir. 1997) and *Mann v. Scott*, 41 F.3d 968, 983–84 (5th Cir. 1994)).

### B.  Trial Counsel

Greenup presents multiple alleged errors by his trial counsel.  He claims trial counsel failed to: (a) object to the anomaly in the jury verdict; (b) object to the State's expert witness; (c) retain an expert to rebut the State's expert; and (d) subject the prosecution's case to meaningful adversarial testing.  He also claims his counsel failed to inform him he had a conflict of interest.

In the instant case, Greenup fails to establish that his counsel's performance was objectively unreasonable or deficient under the circumstances of his case or that there is a reasonable probability that, but for his counsel's actions, the result of the proceedings would have been different.

### 1.  Failure to Object to Jury Verdict

Greenup first claims that his counsel was ineffective for failing to object to an "anomaly" in the jury verdict.  Greenup cites to a portion of the record wherein a juror indicated on the polling slip, "Yes but a less charge."  Greenup claims his counsel should have requested further polling of the jury, objected the verdict or moved for a mistrial.

Greenup raised this issue in his application for post-conviction relief.  The Trial Court concluded that he had failed to show any deficiency on counsel's part or any resulting prejudice. The Trial Court explained that the juror's reply had been counted as a "No" vote and concluded that Greenup was convicted by a vote of 10-2 which was a valid verdict pursuant La. Code Crim. P. art. 782(A).[42]

---

[42]St. Rec. Vol. 8 of 15, Trial Court Order, p. 2, 8/4/15.

The Fifth Circuit found no error in the Trial Court's ruling.[43]   The Louisiana Supreme Court found Greenup failed to meet the *Strickland* standard and adopted the Trial Court's reasoning as its own.[44]

The record reflects that defense counsel requested polling after the jury returned its verdict and the jurors were provided with polling slips.[45]  Ten of the jurors indicated that the guilty verdict was their individual verdict by circling "Yes" on the polling slips and one juror circled "No".  One of the jurors indicated on the polling slip, "Yes but a less charge."[46]  The Trial Court inquired of counsel whether the verdict should be recorded as 11-1 or 10-2.[47]  Counsel agreed that the verdict should be recorded as 10-2.[48]

Defense counsel reasoned, "I don't think it has to be in – if there were another 'no' vote, we'd need to do something.  But that doesn't – that doesn't change anything."[49]  He continued, "I

---

[43]St. Rec. Vol. 11 of 15, 5th Cir. Order, 15-KH-556, p. 3, 10/22/15.

[44]*State ex rel. Greenup v. State*, 215 So. 3d 231 (La. 2017) (per curiam); St. Rec. Vol. 14 of 15, La. S. Ct. Order, 2015-KH-2128, 4/7/17.

[45]St. Rec. Vol. 3 of 15, Trial Transcript, pp. 53-54, 6/14/12; St. Rec. Vol. 4 of 15, Closing Argument and Jury Verdict Transcript, pp. 49-50, 6/14/12.

[46]St. Rec. Vol. 3 of 15, Trial Transcript, p. 56, 6/14/12; St. Rec. Vol. 4 of 15, Closing Argument and Jury Verdict Transcript, p. 51, 6/14/12.

[47]St. Rec. Vol. 3 of 15, Trial Transcript, p. 55, 6/14/12; St. Rec. Vol. 4 of 15, Closing Argument and Jury Verdict Transcript, p. 50, 6/14/12.

[48]There is a discrepancy between two versions of the transcripts relating to a statement by counsel that, "I think it should be recorded as ten-two."  One transcript attributes that statement as being made by defense counsel. St. Rec. Vol. 3 of 15, Trial Transcript, p. 55, 6/14/12.  The other transcript attributes the statement to ADA Kinnett.  St. Rec. Vol. 4 of 15, Closing Argument and Jury Verdict Transcript, p. 50, 6/14/12.  After this statement, ADA Kinnett stated, "Judge, the State would *agree* that the verdict should be recorded as ten-two."  *Id*., at p. 50; St. Rec. Vol. 3 of 15, Trial Transcript, p. 55, 6/14/12 (emphasis added).  Thus, it appears that the original statement was made by defense counsel.  Regardless, the discrepancy is immaterial as it is clear from the record that defense counsel agreed that the verdict was valid.

[49]St. Rec. Vol. 3 of 15, Trial Transcript, p. 55, 6/14/12; St. Rec. Vol. 4 of 15, Closing Argument and Jury Verdict Transcript, p. 51, 6/14/12.

don't think we can take any position.  It's not a "No."  I mean, there's not nine, so it doesn't matter."[50]  The Trial Court construed the "Yes but a less charge" vote as a "No" vote and recorded the verdict as 10-2.[51]

Greenup has failed to show deficient performance on behalf of counsel for his failure to request further polling, object to the verdict, or move for a mistrial or any resulting prejudice.  The Louisiana Constitution and the Louisiana Code of Criminal Procedure require only ten out of twelve jurors to concur.  La. Code Crim. P. art. 782(A).  The jury was advised that, along with aggravated rape, it could consider the responsive verdicts of attempted aggravated rape, forcible rape, simple rape, sexual battery, molestation of a juvenile, attempted molestation of a juvenile, indecent behavior, and attempted indecent behavior.[52]  The jury subsequently returned a legal jury verdict of ten finding Greenup guilty of aggravated rape, one finding him not guilty, and one finding him guilty of a lesser offense.  Counsel was not ineffective in failing to object or pursue a motion he likely determined to be futile or meritless, and which would not have been successful or changed the outcome of the trial.  *See Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) (counsel is not required to make futile motions or frivolous objections)*;Smith v. Puckett*, 907 F.2d 581, 585 n. 6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); *see also*, *Wood v. Quarterman*, 503 F.3d 408, 413 (5th Cir. 2007) (" '[f]ailure to raise meritless objections is not ineffective lawyering; it is the very

---

[50]St. Rec. Vol. 3 of 15, Trial Transcript, p. 56, 6/14/12; St. Rec. Vol. 4 of 15, Closing Argument and Jury Verdict Transcript, p. 51, 6/14/12.

[51]St. Rec. Vol. 3 of 15, Trial Transcript, p. 56, 6/14/12; St. Rec. Vol. 4 of 15, Closing Argument and Jury Verdict Transcript, p. 51-52, 6/14/12.

[52]St. Rec. Vol. 4 of 15, Closing Argument and Jury Verdict Transcript, p. 51, 6/14/12.

opposite.' ") (quoting *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994)); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (concluding that "counsel is not required to make futile motions or objections.").

The state courts' denial of relief on this issue was not contrary to, or an unreasonable application of, *Strickland*. Greenup is not entitled to relief on this claim.

### 2. **Failure to Object to State's Expert Witness**

Greenup next claims that defense counsel failed to object to the qualification of Anne Troy as an expert witness in the area of child sexual abuse. He claims that Troy did not have the proper "certification" to testify as an expert. He further appears to claim that his counsel should have requested a hearing pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

Greenup raised this claim in his application for post-conviction relief. The Trial Court found that Troy was "overwhelmingly qualified to give expert testimony. She had a master's degree as a family nurse practitioner, was a teacher of nursing at LSU for 17 years, had over 500 hours of clinical experience with physicians in the field of child abuse, and had been accepted as an expert in fourteen previous cases."[53] The Trial Court concluded that there was no basis to believe that defense counsel could have prevented Troy from being qualified as an expert witness in the field of child sexual abuse.[54]

The Fifth Circuit reasoned that counsel's reasonable perception of the futility of an objection could not constitute deficient performance and found no error in the Trial Court's

---

[53]St. Rec. Vol. 8 of 15, Trial Court Order, p. 2, 8/4/15.

[54]*Id.*

ruling.[55]  The Louisiana Supreme Court found Greenup failed to meet the *Strickland* standard and attached and made a part thereof the Trial Court's written decision.[56]

Troy, a sexual assault nurse examiner at the Children's Hospital Audrey Hepburn Care Center, testified about her extensive background and training.  She has two Master's Degrees in Psychiatric Nursing and Family Nurse Practitioner, 500 hours of child abuse clinical experience, and been a nurse for thirty-three years.[57]  Troy had examined over 750 children for maltreatment and had been previously qualified as an expert in the field of physical child abuse and sexual abuse of children fourteen times in Jefferson, Terrebonne, Tangipahoa, St. Tammany and Orleans Parishes.[58]  After hearing Troy's testimony regarding her background, defense counsel did not object to the Trial Court qualifying Troy as an expert in child sexual abuse.[59]

Troy testified that D.B. told her the incidents with Greenup occurred in the bathroom of the Tanglewood apartments when D.B. was two or three years old and that he did not report the incidents due to fear.[60]  Troy testified that the history D.B. provided was detailed and spontaneous and not inconsistent with sexual abuse even with normal findings and that it was not unusual to delay abuse disclosure.[61]

---

[55]St. Rec. Vol. 11 of 15, 5th Cir. Order, 15-KH-556, p. 4, 10/11/15 (citing *State v. Penn*, 758 So. 2d 776, 778 n.1 (La. 1999) (per curiam), *cert. denied*, 529 U.S. 1134 (2000)).

[56]*State ex rel. Greenup v. State*, 215 So. 3d 231 (La. 2017) (per curiam); St. Rec. Vol. 14 of 15, La. S. Ct. Order, 2015-KH-2128, 4/7/17.

[57]St. Rec. Vol. 2 of 15, Trial Transcript, pp. 169-70, 6/13/12.

[58]*Id.*, at pp. 175-76.

[59]*Id.*, at pp. 176-77, 179.

[60]*Id.*, at pp. 188-89.

[61]*Id.*, at pp. 195, 199-208, 217.

Initially, Greenup fails to show his counsel was ineffective in failing to request a *Daubert* hearing or any resulting prejudice. The Louisiana Supreme Court has adopted the *Daubert* analysis, *State v. Foret*, 628 So. 2d 1116, 1121, 1123 (La. 1993), only in instances where the methodology used by an expert is being questioned. *Dinett v. Lakeside Hospital*, 811 So. 2d 116, 119 (La. App. 4th Cir. 2002). "The Louisiana courts have long accepted expert testimony in the field of forensic pediatrics and child abuse." *State v. Borden*, 986 So. 2d 158, 172 (La. App. 5th Cir. 2008); *see also State v. Greene*, 951 So. 2d 1226, 1238 (La. App. 5th Cir.2007). In this case, Troy's testimony was within accepted bounds in cases involving child sexual abuse and therefore a *Daubert* hearing was not necessary. Counsel is not ineffective for electing not to pursue a futile *Daubert* motion. *See Shields v. Dretke*, 122 F. App'x 133, 153 (5th Cir. 2005); *see also Flick v. Warren*, 465 F. App'x 461, 465 (6th Cir. 2012).

Greenup also challenges the constitutional effectiveness of his counsel's failure to question the qualifications of Troy to testify as an expert. He, however, fails to establish that counsel had any valid basis to question Troy's qualifications or any prejudice resulting from his failure to do so. Troy had been qualified many times as an expert before Greenup's case and her testimony in similar matters had been found to be permissible under *Daubert* and Louisiana law. *State v. Griffin*, No. 2015 KA 1765, 2016.2016 WL 2840309 (La. App. 1st Cir. April 27, 2016); *State v. Merwin*, 186 So. 3d 759, 771-72 (La. App. 4th Cir. 2016), *writ denied*, 216 So. 3d 50 (La. 2017).

The denial of relief on this issue was not contrary to, or an unreasonable application of, *Strickland*. Greenup is not entitled to relief on these claims.

### 3.    <u>Failure to Retain an Expert</u>

Greenup next argues his counsel was ineffective for failing to retain an expert.  Greenup claims that an expert could have provided medical testimony about the victim's injuries or lack thereof as well as an opinion on whether the victim's claims were consistent with the evidence, impeached the victim's inaccurate or contradictory statements to police, and offered a more reasonable hypothesis.

The State argues that Greenup's claim that a defense expert would have helped his case is purely speculative.  The State points out that Greenup does not specify what a defense forensic expert would have found, how such an expert could have arrived at conclusions different than Troy's, which of Troy's findings could be subject to a different interpretation, or how such an expert could have contradicted Troy's testimony.  Additionally, the State asserts that the cross-examination of Troy by defense counsel regarding Troy's findings and conclusions was sufficient to test the State's presentation of its case.

The Trial Court, applying the controlling U.S. Supreme Court jurisprudence set forth in *Strickland*, denied Greenup's claim, initially finding that it to be speculative.  Greenup "fail[ed] to inform the court in what way a defense expert might have testified."[62]  The Trial Court found that defense counsel challenged the State's expert's findings when he conducted a thorough cross-examination of Troy.[63]  Finally, the Trial Court concluded "[t]he overriding reason to deny this

---

[62]St. Rec. Vol. 8 of 15, Trial Court Order, p. 2, 8/4/15.

[63]*Id.*

24

claim, however, is the well-settled principle that the choice of which witnesses to call belongs to defense counsel."[64]

The Louisiana Fifth Circuit Court of Appeal also found that the decision of whether to call a particular witness was a matter of trial strategy and found no error in the Trial Court's ruling.[65] The Louisiana Supreme Court found Greenup failed to meet the *Strickland* standard and adopted as its own the Trial Court's order.[66]

To prevail on an ineffective assistance claim based upon uncalled witnesses, including an expert witness, a habeas petitioner must show that he was prejudiced by counsel's decision not to call an expert. Thus he must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. There are "countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Id*. at 689. In some cases, counsel would be considered ineffective for failing to consult with or call an expert but state courts would have a wide latitude in making such a determination. *Harrington*, 131 S.Ct. at 789.

In order to demonstrate prejudice arising from failure to call witnesses, the petitioner must show that the witness would have testified at trial and that the testimony would have been favorable. *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir.1985). There must be a reasonable probability that the uncalled witnesses would have made a difference to the result at trial. *Id*. at 603. Claims of uncalled witnesses are disfavored, especially if the claim is unsupported by

---

[64]*Id*.

[65]St. Rec. Vol. 11 of 15, 5th Cir. Order, 15-KH-556, p. 4, 10/22/15.

[66]*State ex rel. Greenup v. State*, 215 So. 3d 231 (La. 2017) (per curiam); St. Rec. Vol. 14 of 15, La. S. Ct. Order, 2015-KH-2128, 4/7/17.

evidence indicating the witnesses's willingness to testify and the substance of the proposed testimony. *See Harrison v. Quarterman*, 496 F.3d 419, 428 (5th Cir.2007). Moreover, with respect to calling experts, it is clear that *Strickland* does not require for every prosecution expert an equal and opposite expert from the defense. *See Harrington*, 131 S.Ct. at 791 (It is well within the bounds of a reasonable judicial determination for a state court to conclude that defense counsel could follow a strategy that did not require the use of experts). Additionally, the United States Supreme Court has recognized that "[i]n many instances, cross examination [of the prosecution's expert] will be sufficient to expose defects in an expert's presentation." *Id.* at 791. "[A] decision to attack the state's expert witnesses on cross-examination rather than calling additional experts can be a part of a reasonable trial strategy." *Bower v. Quarterman*, 497 F.3d 459, 467 (5th Cir. 2007).

As an initial matter, Greenup has failed to establish that an expert could be found whose testimony and findings would have contradicted Troy's testimony. *See Tinsely v. Million*, 399 F.3d 706, 806 (6th Cir.), *cert. denied*, 546 U.S.1044 (2005) (defendant presented no evidence suggesting that "there were experts to be had" who would have contradicted State's experts). "[C]onclusory allegations that such experts exist" are insufficient to show counsel was ineffective in failing to hire a defense expert. *Id.* He thus fails to show that an expert was willing to testify or what the content of the testimony would have been.

In this case, the record shows that counsel vigorously cross-examined Troy.[67] The cross-examination by defense counsel demonstrated that he was well-prepared and held the knowledge

---

[67]St. Rec. Vol. 2 of 15, Trial Transcript, pp. 209-18, 6/13/12.

necessary to attack Troy's testimony as well as the testimony of the other witnesses. *See Bowers v. Quarterman*, 497 F.3d 459, 472 (5th Cir. 2007) (citing *Dees v. Caspiri*, 904 F.2d 452, 455 (8th Cir. 1990)). Based on the record, it also is reasonable to conclude that defense counsel strategically chose to undermine the State's evidence through his cross-examination at trial rather than risk bringing in an expert who may have confirmed the State's findings to the detriment of Greenup's defense. "Unless a crucial and important legal issue rests on the reliability of scientific evidence, ... counsel is not constitutionally required to seek out a contradictory expert so long as the decision not to call an expert is informed and based on a strategic decision." *See Bowers*, 497 F.3d at 472. The decision not to call an expert under the circumstances of this case was well within counsel's trial strategy discretion. *See Dees v. Caspiri*, 904 F.2d 452, 454-55 (8th Cir. 1990) (counsel's only duty is to assure that he has the expertise necessary to cross-examine the State's experts.).

Greenup's conclusory and unsupported contention that a defense expert would have been able to counter the State's evidence is simply unsustainable. He fails to show that he was prejudiced from counsel's strategic choice not to call an expert and thus fails to meet his burden under *Strickland*. Nor has he established that his counsel's performance was deficient in any way, that his trial was rendered fundamentally unfair by his counsel's performance, or that his counsel's actions prejudiced him. As such, he fails to establish that the state courts' decision denying relief was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Greenup is not entitled to relief on this claim.

### 4.  **Meaningful Adversarial Testing**

Greenup generally claims his counsel failed to subject that State's case to "meaningful adversarial testing."  He more specifically claims that his counsel failed to challenge the testimony of D.B. and his mother.[68]  The latter claim amounts to an argument that defense counsel did not effectively cross-examine D.B. and his mother.

In *United States v. Cronic*, 466 U.S. 648 (1984), the Supreme Court held that a defendant may be constructively denied counsel, even though an attorney had been appointed to represent him.  The *Cronic* Court recognized that the performance of counsel may be so inadequate as to constitute no assistance of counsel at all, despite the physical presence of an attorney at the proceeding.  *Cronic*, 466 U.S. at 654 n. 11.  The *Cronic* presumption of prejudice arises in circumstances where: (1) there exists a "complete denial of counsel" or a denial of counsel "at a critical stage" of defendant's trial; (2) defense counsel fails to "subject the prosecution's case to meaningful adversarial testing"; or (3) counsel "is called upon to render assistance where competent counsel very likely could not."  *Cronic*, 466 U.S. at 658-59 (citations omitted).  Only in these "circumstances of magnitude" may "the likelihood that the verdict is unreliable [be] so high" that a constitutional violation may be found.  *Mickens v. Taylor*, 535 U.S. 162, 166 (2002).

The Supreme Court has also emphasized that for *Cronic* to apply "the attorney's failure must be complete."  *Bell*, 535U.S. at 697.  "For purposes of distinguishing between the rule of *Strickland* and that of *Cronic*," the Supreme Court held that a case does not come under *Cronic*

---

[68]Greenup did not separately enumerate these claims but rather includes them within in his conflict of interest claim.  The state courts did not specifically address Greenup's claim that his counsel failed to subject the prosecution's case to meaningful adversarial testing or his more specific claim regarding the cross-examination of D.B. and his mother.

merely because counsel failed to "oppose the prosecution . . . at specific points" in the proceeding. *Bell*, 535 U.S. at 697. The distinction between counsel's failure to oppose the prosecution <u>entirely</u> and counsel's failure to do so at certain points is a "difference . . . not of degree but of kind." *Bell*, 535 U.S. at 697. The *Cronic* standard applies only when counsel has <u>entirely</u> failed to challenge the prosecution's case. *Id*. at 697; *Riddle v. Cockrell*, 288 F.3d 713, 718 (5th Cir. 2002) ("constructive denial of counsel" sufficient to support a presumption of prejudice arises only when counsel was absent from the courtroom, there was an actual conflict of interest, or there was official interference with the defense); *Mayo v. Cockrell*, 287 F.3d 336, 340 n.3 (5th Cir. 2002); *Burdine v. Johnson*, 262 F.3d 336, 344 n.4 (5th Cir. 2001).

Greenup has the burden to show that he was constructively denied counsel. *Childress v. Johnson*, 103 F.3d 1221, 1228, 1231-32 (5th Cir. 1997). "It is not enough for the defendant to show mere 'shoddy representation' or to prove the existence of 'errors, omissions, or strategic blunders' by counsel. Bad lawyering, regardless of how bad, does not support the [per se] presumption of prejudice." *Johnson v. Cockrell*, 301 F.3d 234, 238-39 (5th Cir. 2002) (citing *Jackson v. Johnson*, 150 F.3d 520, 525 (5th Cir. 1998) (quoting *Childress*, 103 F.3d at 1228-29). The issue of the constructive denial of counsel under *Cronic* is a mixed question of law and fact. *French v. Jones*, 225 F.3d 658, 2000 WL 1033021, at *3 (6th Cir. Jul. 18, 2000) (Table, Text in Westlaw).

The state court record reflects that Greenup's appointed trial counsel actively challenged the State's evidence throughout the trial. The transcripts of the state court proceedings demonstrate that counsel was fully familiar with the case and adequately prepared to challenge the State's evidence. There is nothing in this record to suggest that Greenup's trial counsel was "inert" in his

representation at trial. *Jackson v. Johnson*, 150 F.3d at 525. Greenup has not established that he was constructively denied counsel under the *Cronic* standard. His challenge to counsel's cross-examination of D.B. and his mother will be further addressed below under *Strickland*.

It is clear that "[t]he decision whether to cross-examine a witness, and if so, how vigorously to challenge the witness' testimony, requires a quintessential exercise of professional judgment." *Ford v. Cockrell*, 315 F. Supp. 2d 831, 859 (W.D. Tex. 2004), *aff'd*, 135 F. App'x 769 (5th Cir. 2005); *accord Lewis v. Cain*, Civ. Action No. 09-2848, 2009 WL 3367055, at *8 (E.D. La. Oct. 16, 2009), *aff'd*, 444 F. App'x 835 (5th Cir. 2011); *Williams v. Cai*n, Civ. Action Nos. 06-0224 and 06-0344, 2009 WL 1269282, at *11 (E.D. La. May 7, 2009), *aff'd*, 359 F. App'x 462 (5th Cir. 2009); *Parker v. Cain*, 445 F.Supp.2d 685, 710 (E.D. La. 2006). The United States Supreme Court has cautioned courts not to second-guess counsel's decisions on such matters through the distorting lens of hindsight; rather, courts must employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy. *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. It is irrelevant that another attorney might have made other choices or handled such issues differently. As the Supreme Court noted: "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Id.*

In the instant case, Greenup simply has not meet his burden with respect to this claim. Contrary to his suggestion that his counsel failed to challenge the credibility of D.B. and his mother, defense counsel in fact effectively cross-examined both witnesses. The transcript demonstrates that counsel questioned D.B. mother's about her parents' bias against Greenup, her unsuccessful attempt to obtain child support from Greenup, and D.B.'s difficulties in school

around the time of his allegations.[69]  He also questioned D.B.'s mother about D.B.'s failure to report the incidents to her earlier and the lack of injuries to D.B.[70]

Defense counsel elicited testimony from D.B. that he did not have a relationship with Greenup and that his grandparents did not allow Greenup in their home.[71]  He further elicited testimony that D.B. made the allegations against Greenup during a period of time when D.B. was having behavioral issues at school.[72]

It is clear from the record that counsel attempted to discredit D.B. and his mother through cross-examinations in an effort to raise doubt about the reliability of their testimony and in support of Greenup's claim of actual innocence.  The testimony was presented to the jury, who as the trier of fact, weighed and considered the testimony.  The fact that the jury did not believe the defense does not render counsel's performance constitutionally deficient.  *See Martinez v. Dretke*, 99 F. App'x 538, 543 (5th Cir. 2004) ("[A]n unsuccessful strategy does not necessarily indicate constitutionally deficient counsel.").  "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."  *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052 (citations omitted).

Trial counsel did not act deficiently or otherwise prejudice the defense when he cross examined D.B. and his mother.  Greenup is not entitled to relief on this claim.

---

[69]St. Rec. Vol. 2 of 15, Trial Transcript, pp. 39-45, 6/13/12.

[70]*Id*., at pp. 42-43, 45.

[71]*Id*., at pp. 64-65, 71.

[72]*Id*., at pp. 67-68.

### 5.  **Conflict of Interest**

Greenup contends that his counsel, Andrew Duffy, and counsel's investigator, Keith Lobrano, indirectly caused a chain of events which resulted in the instant charge of aggravated rape to be filed against him.  He therefore contends Duffy had a conflict of interest in representing him in the aggravated rape case.

Greenup raised this claim in his application for post conviction relief.  The Trial Court found that Greenup failed to meet his burden of proof of showing an actual conflict of interest or any adverse effect.[73]  The Louisiana Court of Appeal found no error in those findings.[74]  The Louisiana Supreme Court found Greenup failed to meet the *Strickland* standard and attached the Trial Court's order.[75]

Duffy apparently represented Greenup in a different case charging molestation of L.T.  The defense investigator contacted D.B.'s mother to discuss Greenup's character with regard to the molestation case.  It was after this contact that D.B.'s mother initiated a conversation with D.B. which resulted in D.B. disclosing to his mother that Greenup raped him.  The rape was thereafter reported to law enforcement by OSC and Greenup was eventually charged with the aggravated rape of D.B.

At a pretrial hearing on January 25, 2012, the following discussion occurred[76]:

MS. FUNK:   And, Judge, there is one additional issue which I think Mr. Duffy and I can work out.  It's just, we'll keep you apprised of it, and it's how the

---

[73]St. Rec. Vol. 8 of 15, Trial Court Order, p. 2-3, 8/4/15.

[74]St. Rec. Vol. 11 of 15, 5th Cir. Order, 15-KH-556, p. 4, 10/22/15.

[75]*State ex rel. Greenup v. State*, 215 So. 3d 231 (La. 2017) (per curiam); St. Rec. Vol. 14 of 15, La. S. Ct. Order, 2015-KH-2128, 4/7/17.

[76]St. Rec. Vol. 1 of 15, Hearing Transcript, pp. 29-31, 1/25/12.

disclosure in the second case comes out, which is the, comes from the – can I tell her?

MR. DUFFY: Sure.

MS. FUNK:    Okay.  It's the, [D.B.'s] mom gets a phone call from Mr. Lobrono.

MR. DUFFY: Keith, the investigator.

MS. FUNK:    Investigator for Mr. Duffy.

THE COURT: Oh.  Oh.

MS. FUNK:    Asking about, sort of character, the defendant.  That's my limited appreciation of it.

MR. DUFFY: Yes.  Because the other case is open so we have to get into –

MS. FUNK:    Right, because the other case is open so they were investigating.

MR. DUFFY: We're investigating the other one and we go to the second victim's mother, who's his wife for a while and that's how the whole thing unfolds because then she goes to the kid.

MS. FUNK:    She starts to talk to him about it and that's when he discloses.

THE COURT: His son, his biological son discloses.

MR. DUFFY: Right.

MS. FUNK:    So we just want to teeter around that without implicating Mr. Duffy as much as we can.

MR. DUFFY: Always the bad guy.  We had no idea.  We didn't know it was –

THE COURT: And wait.  So Keith Lobrano, who's your investigator on this case.

MR. DUFFY: Are we on the record?  Can we go off the record?

THE COURT: We're on the record.

MR. DUFFY: Shawn, can we go off?

The parties' off the record discussion was not transcribed.

" 'Under the Sixth Amendment, if a defendant has a constitutional right to counsel, he also has a corresponding right to representation that is free from any conflict of interest.' " *Morin v. Thaler*, 374 F. App'x 545, 551 (5th Cir.2010) (quoting *United States v. Vaquero*, 997 F.2d 78, 79 (5th Cir.1993)).  The Supreme Court has held that prejudice is presumed when counsel is burdened by an actual conflict of interest.  *Strickland*, 466 U.S. at 692.  However, "[p]rejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'"  *Id*. (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350, 348 (1980)).

Consequently, application of the actual conflict or presumed prejudice standard articulated in *Cuyler* is limited.  The Fifth Circuit has recognized that the *Cuyler* limitation applies to cases of "multiple representation" by counsel.  *Beets v. Scott*, 65 F.3d 1258, 1265-66 (5th Cir. 1999).  The *Beets* court explained that "*Strickland* offers a superior framework for addressing attorney conflicts outside the multiple or serial client context."  *Id*. at 1265.  "*Strickland* more appropriately gauges an attorney's conflict of interest that springs not from multiple client representation but from a conflict between the attorney's personal interest and that of his client."  *Id*. at 1260.

The Fifth Circuit further elaborated that "[i]n stark contrast to multiple representation situations, there is little meaningful distinction between a lawyer who inadvertently fails to act and one who for selfish reasons decides not to act."  *Id*. at 1271; *Moreland v. Scott*, 175 F.3d 347, 349 (5th Cir.1999).  Thus, "[u]nder *Beets*, cases in which it is alleged that the attorney's representation was affected by his own self-interest are evaluated under the more relaxed *Strickland* standard."  *Moreland*, 175 F.3d at 349 (citation omitted).

Greenup's allegation does not involve multiple representations nor any other active conflict of interest. When a personal conflict of interest is alleged, the pertinent inquiry is whether Greenup has demonstrated that his "attorney's performance fell below an objective standard of reasonableness and that it prejudiced the defense, undermining the reliability of the proceeding." *Beets*, 65 F.3d at 1272-73.

In this case, Greeunp alleges a personal conflict of interest existed because the defense's investigation of the case involving L.T. ultimately resulted in Greenup being charged with the aggravated rape of D.B. Initially, while Greenup appears to contend that he was unaware of the investigator's contact with D.B.'s mother which led to D.B. disclosing the rape, the record shows that Greenup was present at the hearing when counsel disclosed in open court the chain of events which led to the charge in this case.[77]  Greenup did not raise any objection to his counsel's continued representation of him.

Further, even if a conflict might conceivably have existed under these extremely distinct circumstances, the record contains no indication that it compromised the quality of defense counsel's representation. This was not a case where counsel was actively representing multiple parties with conflicting interests so as to suggest the division of loyalties. *See Strickland*, 466 U.S. at 692. Moreover, there is no indication that Duffy was working against Greenup's interest. Rather, the state court record reflects that Duffy filed various pretrial motions and properly prepared for trial. The record further demonstrates that counsel vigorously and meaningfully challenged the State's case at trial.

---

[77]*Id.*, at p. 4.

Greenup has failed to establish that counsel's performance "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having a just result." *Strickland*, 466 U.S. at 686. He is not entitled to relief on this claim and the denial of such by the state courts was not contrary to or an unreasonable application of *Strickland*.

### 6. **Appellate Counsel**

Greenup also claims appellate counsel was ineffective for failing to assign on appeal the issue of conflict of interest.

Greenup raised this claim in application for post conviction relief. The Trial Court found that Greenup failed to meet his burden of showing that the appellate court would have granted relief had appellate counsel raised the issue.[78] In the last reasoned decision, the Louisiana Supreme Court found that Greenup failed to meet the *Strickland* standard.[79]

The *Strickland* standard also applies to claims of ineffective assistance of appellate counsel. *Duhmel v. Collins*, 955 F.2d 962, 967 (5th Cir. 1992) (citing *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991)). In reviewing claims of ineffective assistance of appellate counsel, the Supreme Court has expressly observed that appellate counsel "need not advance every argument, regardless of merit, urged by the [ ] defendant. *Evitts v. Lucey*, 469 U.S. 387, 394 (1985). When alleging ineffective assistance of appellate counsel, the defendant "must show that the neglected claim would have had a reasonable probability of success on appeal." *Duhmel*, 955 F.2d at 967. However, failing to raise every meritorious claim on appeal does not make counsel deficient. *Green v. Johnson*, 116 F.3d 1115, 1125-26 (5th Cir. 1997) (citing *Ellis v. Lynaugh*, 873 F.2d 830,

---

[78]St. Rec. Vol. 8 of 15, Trial Court Order,p. 3, 8/4/15.

[79]*State ex rel. Greenup v. State*, 215 So. 3d 231 (La. 2017) (per curiam); St. Rec. Vol. 14 of 15, La. S. Ct. Order, 2015-KH-2128, 4/7/17.

840 (5th Cir. 1989)).  Similarly, failing to raise a frivolous claim "does not cause counsel's performance to fall below an objective level of reasonableness."  *Id.* at 1037.  Courts give great deference to professional appellate strategy and applauds counsel for "winnowing out weaker arguments on appeal and focusing on one central issue if possible, and at most a few key issues...." *Jones v. Barnes*, 463 U.S. 745 (1983).  This is true even where the weaker arguments have merit. *Id.* at 751–2.  Instead, the applicable test is whether the omitted issue was "clearly stronger" than the issue[s] actually presented on appeal.  *See*, *e.g.*, *Diaz v. Quarterman*, 228 F. App'x 417, 427 (5th Cir. 2007); *see also Smith v. Robbins*, 528 U.S. 259, 288 (2000).

It is clear that appellate counsel "is not obligated to urge on appeal every nonfrivolous issue that might be raised (not even those requested by defendant)."  *West v. Johnson*, 92 F.3d 1385, 1396 (5th Cir. 1996). "Far from evidencing ineffectiveness, an appellant counsel's restraint often benefits his client because "a brief that raises every colorable issue runs the risk of burying good arguments ... in a verbal mound made up of strong and weak contentions." *Jones*, 463 U.S. at 753. [I]t is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent."  *Id.*; *see also United States v. Tucker*, 434 F. App'x 355, 362 (5th Cir. 2011) (per curiam) ("The Supreme Court has recognized 'the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review.' " (quoting *Jones*, 463 U.S. at 752).  To reiterate, the issues appellate counsel failed to assign must have been "clearly stronger" than those issues actually presented on appeal.  *See*, *e.g.*, *Diaz*, 228 F. App'x at 427; *see also Smith*, 528 U.S. at 288.

Greenup's appellate counsel was not required to raise every possible claim appearing on the record.  Greenup's appellate counsel raised two claims: (1) the Trial Court erred in admitting

evidence relating to Greenup's alleged sexual battery of L.T.; and (2) the Trial Court erred in failing to grant his motion for new trial based on the State's prejudicial rebuttal argument. Although those claims were ultimately found to be without merit, Greenup has not shown that his conflict of interest claim was clearly stronger.  Without some showing, Greenup cannot succeed under *Strickland*.  As explained above, Greenup's conflict of interest claim lacks merit.  Failure to raise a meritless claim on appeal would not be deficient performance.  *See Anderson v. Quarterman*, 204 F. App'x 402, 410 (5th Cir.2006) ("The issues that Anderson argues his counsel should have raised on direct appeal ... lack merit.  As such, failure to raise these issues did not prejudice Anderson."); *see also*, *Kossie v. Thaler*, No. 09–20581, 2011 WL 1659395, at *3 (5th Cir. Apr. 28, 2011) (recognizing the Supreme Court's premise that only when ignored claims are stronger than those raised will the presumption of effectiveness be overcome) (citing *Smith v. Robbins*, 528 U.S. 259, 288 (2000)).

Greenup has failed to establish that the state courts' denial of relief on this issue was contrary to, or an unreasonable application of, Supreme Court law.  Therefore, he is not entitled to relief on this claim.

## VI.   <u>Out of Time Appeal</u>

Greenup claims that the Trial Court erred in failing to grant his request for an out of time appeal based on an incomplete record.  He claims that there is a discrepancy between the two transcripts of the proceedings after the polling of the jury.  The trial transcript attributes to defense counsel the statement that the verdict should be recorded as 10-2 while the transcript of closing arguments attributes the statement to the prosecutor.  He contends that it is unclear which transcript is accurate.  He further contends that a transcript of a pretrial hearing does not include a bench

conference at which counsel discussed the events leading up to D.B.'s disclosure of the sexual battery.

After the Trial Court denied his application for post conviction relief, Greenup filed his motion for out of time appeal in which he claimed that his right to appeal was violated due to an incomplete and inaccurate record.[80]  On June 16, 2016, the Trial Court found the request of out-of-time appeal unwarranted.[81]  Greenup did not seek appellate review of that order.

To the extent Greenup raises this issue as a violation of state law, his claim must fail. Federal habeas review may only consider constitutional violations and noncompliance with federal law as interpreted by the United States Supreme Court.  *See Swarthout v. Cooke*, 562 U.S. 216, 219, 131 S.Ct. 859, 178 L.Ed.2d 732 (2011).

Greenup implies that the inaccurate transcripts of relating to the discussion by the Trial Court and counsel after the verdict and the failure to include a transcript of the off the record bench conference conducted at the pretrial hearing violated his right to due process.  As a result, he has stated a cognizable claim for federal habeas review.  *See Griffin v. Illinois*, 351 U.S. 12, 19–21, 76 S.Ct. 585, 100 L.Ed. 891 (1956).  Greenup claims the inaccurate and incomplete transcripts denied him complete appellate review.  It is indisputably true that a criminal defendant has the right to adequate appellate and other review of his conviction based upon a sufficiently complete and accurate record.  *Mayer v. City of Chicago*, 404 U.S. 189, 198, 92 S.Ct. 410, 30 L.Ed.2d 372 (1971).  However, the Supreme Court has not held that due process requires a verbatim transcript

---

[80]St. Rec. Vol. 8 of 15, Supplement and Amendment to Application for Post Conviction Relief with Motion for Out-Of-Time Appeal, 8/18/15 (dated 8/13/15).

[81]St. Rec. Vol. 8 of 15, Order, 6/13/16.

of the entire proceedings or that an incomplete record confers automatic entitlement to relief. To prevail on a claim that the record was inadequate, a petitioner must prove that the missing portion of the transcript actually prejudiced his appeal in some manner. *Green v. Johnson*, 160 F.3d 1029, 1045 (5th Cir. 1998) ("[B]arring a showing that the [failure to record bench conferences during trial] resulted in 'actual prejudice,' habeas relief is unwarranted." (citation omitted)); *see also Mullen v. Blackburn*, 808 F.2d 1143, 1146 (5th Cir. 1987) (finding petitioner failed to show the absence of voir dire transcript prejudiced his appeal); *Bozeman v. Cain*, Civ. Action No. 09-8423, 2010 WL 2977393, at *4 (E.D. La. June 7, 2010), *report and recommendation adopted*, 2010 WL 2977402 (E.D. La. July 20, 2010) (finding that petitioner's claim failed when there was no actual prejudice resulting from the failure to transcript a bench conference).

Greenup has made no showing of prejudice in this case. On the contrary, the record was adequate for resolution of the claims that were actually asserted on appeal. Where, as here, the missing portion of pretrial hearing transcript and the transcript of the discussion between the Trial Court and counsel after the verdict were immaterial to the claims asserted on appeal, the record was adequate for full appellate review, and there was no denial of a meaningful appeal. *See Schwander v. Blackburn*, 750 F.2d 494, 497–98 (5th Cir. 1985) (explaining that petitioner was not denied a meaningful appeal where the omitted portions of the trial transcript were immaterial to the error alleged on direct appeal); *Thomas v. Cain*, Civ. Action No. 12-2818, 2013 WL 5960808, at *5 (E.D. La. Nov. 6, 2013) (finding that the record was adequate for resolution of appellate claims).

Greenup is not entitled to federal habeas corpus relief on this claim.

## VII.    Other Crimes Evidence

Greenup claims that the Trial Court erred in allowing the State to introduce evidence of his alleged sexual battery of L.T.  He claims the evidence was unduly prejudicial and was not probative of any issue in his case.

On November 14, 2011, the State filed notice of its intent to present evidence related to L.T.'s allegations at Greenup's trial pursuant to La. Code Evid. art. 404(B) to show modus operandi, opportunity, and intent.[82]  At a hearing on January 25, 2012, the State argued that the evidence was also admissible under La. Code Evid. art. 412.2 to show Greenup's lustful disposition towards children.[83]  Defense counsel argued that the probative value of the evidence did not outweigh the prejudicial effect under La. Code Evid. Art. 403.[84]

Louisiana Code of Evidence art. 412.2(A) provides in relevant part that certain evidence of other sexual activity may be admissible:

> When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused's commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.

La. Code Evid. art. 403 applies a balancing test to determine whether evidence should be excluded:

---

[82]St. Rec. Vol. 1 of 15, Notice of Intent to Use Evidence of Other Crimes, 11/14/11; Defense Opposition to State's Notice of Intent to Use Evidence of Other Crimes, 12/14/11.

[83]St. Rec. Vol. 1 of 15, Hearing Transcript, pp. 20-23, 1/25/12.

[84]*Id.*, at p. 20.

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.

The Trial Court found "the introduction of the young males who were approximately the same age when the incidents occurred, pretty much the same thing that was going on, one a little worse than the other. I think under 404(B) and 412.2, those would be admitted, the introduction of other crimes" and held the evidence was relevant and probative to show opportunity, intent and modus operandi as well as Greenup's lustful disposition towards children.[85] In doing so, the Trial Court implicitly held that the probative value of the evidence outweighed any prejudice and the factual distinctions between the crimes were insubstantial.

Greenup's appointed counsel raised this issue again on direct appeal, arguing the Trial Court erred in admitting the evidence. The Louisiana Fifth Circuit found that the evidence was "highly relevant to show that [Greenup] had a lustful disposition toward young boys with whom he had regular contact."[86] The court reasoned that both boys were around the age of five when the incidents occurred and that Greenup lived with D.B and visited L.T. daily. The appellate court noted that while the charged offense and the act against L.T. were different, there was no requirement that the sexual acts be identical. The court found that the probative value of the evidence to show Greenup's lustful disposition toward children substantially outweighed its prejudicial nature and orderly the presentation of the evidence along with the trial court's limiting instruction minimized the prejudice. The appellate court concluded that the Trial Court did not

---

[85]*Id*., at pp. 23-24.

[86]*State v. Greenup*, 123 So. 3d 768, 774 (La. App. 5th Cir. 2013); St. Rec. Vol. 3 of 15, 5th Cir. Opinion, 12-KA-881, p. 10, 8/27/13.

abuse its discretion in admitting the evidence under La. Code Evid. Art. 412.2 and therefore did not address whether the evidence was properly admitted under La. Code Evid. Art 404(B) to prove intent or system.[87] This was the last reasoned state court opinion on the issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

To the extent Greenup argues that the evidence was admitted in violation of Louisiana law, that claim is not cognizable on federal habeas review. *See Swarthout v. Cooke*, 562 U.S. 216, 219 (2011). Habeas corpus review is limited to questions of constitutional dimension, and federal courts generally do not review the admissibility of evidence under state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Gonzales v. Thaler*, 643 F.3d 425, 429 (5th Cir. 2011); *Jernigan v. Collins*, 980 F.2d 292, 298 (5th Cir. 1992). The states are free to implement procedures regarding the admission of evidence, provided those procedures do not infringe on a constitutional guarantee. *Burgett v. Texas*, 389 U.S. 109 (1967).

Therefore, federal courts do not sit to review the propriety of state court evidentiary rulings, unless the proceedings violate due process such that the violation renders the criminal proceeding fundamentally unfair. *Lisenba v. People of the State of California*, 314 U.S. 219, 236-37 (1941); *Peters v. Whitley*, 942 F.2d 937, 940 (5th Cir. 1991) (Habeas review is proper only to determine whether a state trial judge's error is so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right.). In keeping with this principle, the admission of prejudicial

---

[87]*Id*. at 774-75; St. Rec. Vol. 3 of 15, 5th Cir. Opinion, 12-KA-881, pp. 10-11, 8/27/13.

evidence is fundamentally unfair so as to justify federal habeas corpus relief only if it "played a crucial, critical, and highly significant role in the trial." *Gonzales*, 643 F.3d at 430 (quotation omitted).

This issue presents a mixed question of law and fact. *Wilkerson v. Cain*, 233 F.3d 886, 890 (5th Cir. 2000). Under the applicable standard of review, this Court therefore must determine if the state courts' decision is contrary to or involved an unreasonable application of Supreme Court precedent prohibiting an unfair trial.

As an initial matter, Greenup has failed to establish any error by the Trial Court which would trigger review under due process standards. *Robinson v. Whitley*, 2 F.3d 562, 567 (5th Cir. 1993) (where there is no showing of error by a trial court, there can be fundamental unfairness); *Neal v. Cain*, 141 F.3d 207, 214 (5th Cir. 1998). The admission of the evidence was affirmed by the Louisiana Fifth Circuit as proper under state law. The Louisiana Supreme Court has held that La. Code Evid. art. 412.2, under which the evidence was admitted, was enacted to lower the obstacles to admission of "propensity evidence" in sexual assault cases, especially those involving children. *State v. Williams*, 830 So. 2d 984, 986-987 (La. 2002). In *Williams*, the Louisiana Supreme Court likened Article 412.2 to Fed. R. Evid. 413.[88] *Id.*

Both the state and federal rules are subject to the balancing test concerning probative value and prejudicial effect. *United States v. Dillon*, 532 F.3d 379, 387 (5th Cir. 2008) ("Evidence admissible under Rule 413 is still subject to the Rule 403 balancing test, so it may be excluded if

---

[88]Fed. R. Evid. 413(a) provides as follows: "In a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault. The evidence may be considered on any matter to which it is relevant." The terminology of Rule 413 was amended in 2011 for stylistic purposes only. *See* Advisory Committee Notes, 2011 Amendments foll. Fed. R. Evid. 413(a).

its 'probative value is substantially outweighed by the danger of unfair prejudice.' ") (citing Fed. R. Evid. 403); *State v. Hernandez*, 93 So. 3d 615, 629 (La. App. 5th Cir. 2012) (same with regard to La. Code Evid. art. 412.2). Like the Louisiana courts with Article 412.2, the federal courts have noted that "Rule 413 is based on the premise that evidence of other sexual assaults is highly relevant to prove propensity to commit like crimes, and often justifies the risk of unfair prejudice." *United States v. Enjady*, 134 F.2d 1427, 1431 (10th Cir. 1998); *United States v. Guidry*, 456 F.3d 493, 502-03 (5th Cir. 2006) ("Because sexual assault allegations are often reduced to a swearing match, Congress aimed to assist the fact finder's assessment of credibility through allowing evidence of the defendant's extrinsic sexual misconduct as character or propensity evidence.") (citing *Enjady*, 134 F.2d at 1431).

In this case, the probative value of providing information about the incident of sexual acts with L.T. far outweighed any potential prejudice. As determined by the Fifth Circuit, the evidence was relevant to show Greenup's lustful disposition towards children similar in age to the victim. The evidence was not presented in a confusing manner. Rather, the testimony was clear that the incident involving L.T. occurred years after the incidents involving D.B., and it was not made part of the underlying accusations. Greeunp's encounter with L.T. and the subsequent reporting of that incident was also relevant to the timing of events concerning D.B.'s delayed reporting of the multiple incidents against him. Significantly, the Trial Court gave limiting instructions to the jury before L.T. and his mother testified regarding the restricted use of this "other crimes" evidence.[89]

---

[89]St. Rec. Vol. 2 of 15, Trial Transcript, pp. 122-123, 6/13/12.

There is no indication in the record that the other crimes testimony and evidence misled the jury into an improper verdict. Greenup has not demonstrated in the instant case that the other crimes evidence related to the incident with L.T. was inadmissible or rendered his trial fundamentally unfair. Because he has not demonstrated error in the admission of the evidence, he "has no basis for any alleged due process violation" or denial of a fundamentally fair trial. *Robinson*, 2 F.3d at 567; *Neal v. Cain*, 141 F.3d at 214. Even if he had shown an error, the evidence was not so prejudicial as to violate due process standards.

The denial of relief on this claim was not contrary to, or an unreasonable application of, Supreme Court precedent. Greenup's claim is without merit.

**VIII.    Closing Argument**

In his last claim, Greenup contends the State used prejudicial and inflammatory language during rebuttal argument. He argues that the comments denied him a fair trial. Specifically, he refers to the following portion of rebuttal argument[90]:

MR. KINNETT:

* * * * *

How do you think it's going to be at [school] next year when the boys learn, and they will learn, that [D.B.] was anally penetrated by his father and made to suck his penis? Do you think that the boys will just say "That's okay. We still love you. Try out for the football team next week." Or will it be more along the lines of "There goes that faggot, [D.B.]."

MR. DUFFY:        Judge, I'm going to object at this point. That is going beyond the scope of rebuttal argument.

MR. KINNETT:        There's no scope of rebuttal argument.

---

[90]St. Rec. Vol. 4of 15, Closing Arguments and Jury Verdict Transcript, pp. 46-47, 6/14/12.

THE COURT:          Overruled, but let's wrap it up.

MR. KINNETT:       Will they say that "That's the boy who sucked his dad's penis.  There he goes now.  Don't take a shower with [D.B.].  I heard he likes it in the bathroom."  Are those the things that high school boys are going to be more likely to say about [D.B.]?  Do you think that he's unaware of that?  He's a 13 year old.  That's not the way I want it to be, that's not the way that you want it to be, and that is sure not the way he wants it to be.  But that's the way it's going to be and he knows it.

Greenup's appointed counsel raised the issue in a motion for new trial which the Trial Court denied.[91]  The issue was again raised on appeal and the Fifth Circuit Court of Appeals found that the prosecution's argument was within the scope of rebuttal.[92]  The court reasoned that the defense's closing argument called into question whether D.B. fabricated his allegations in response to problems he faced in school at the time he made the allegations and that the prosecution was permitted to respond to that theory by presenting a hypothetical future situation D.B. would have to consider if he fabricated the allegations.  The court concluded, "While we find that the state's use of this hypothetical, and the derogatory use of the word 'faggot' distasteful, we find the state did not intend to appeal to a juror's potential prejudice against homosexuals.  Therefore, we find that the trial judge properly overruled defense counsel's objection and did not err in denying defendant's motion for new trial on that basis."[93]  The Louisiana Supreme Court denied writs without stated reasons.[94]

---

[91]St. Rec. Vol. 7 of 15, Motion for New Trial, 7/13/12; Minute Entry, 7/23/12; St. Rec. Vol. 3 of 15, Sentencing Transcript, pp. 6-12, 7/20/12.

[92]*State v. Greenup*, 123 So. 3d 768, 775-76 (La. App. 5th Cir. 2013); St. Rec. Vol. 3 of 15, 5th Cir. Opinion, 12-KA-881, p. 13, 8/27/13.

[93]*Id*. at 776; St. Rec. Vol. 3 of 15, 5th Cir. Opinion, 12-KA-881, p. 13, 8/27/13.

[94]*State ex rel. Greenup v. State*, 215 So. 3d 231 (La. 2017) (per curiam); St. Rec. Vol. 14 of 15, La. S. Ct. Order, 2015-KH-2128, 4/7/17.

A prosecutor's comment does not present a claim of constitutional magnitude in a federal habeas action unless it is so prejudicial that the trial was rendered fundamentally unfair in violation of the Due Process Clause. *Jones v. Butler*, 864 F.2d 348, 356 (5th Cir. 1988). "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned. The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citations and quotations omitted); *accord Rogers v. Lynaugh*, 848 F.2d 606, 608 (5th Cir. 1988); *Bell v. Lynaugh*, 828 F.2d 1085, 1095 (5th Cir. 1987). The prosecutor's remarks must be evaluated in the context of the entire trial. *Greer v. Mil*ler, 483 U.S. 756, 765-66 (1987) (citing *Darden*, 477 U.S. at 179); *Kirkpatrick v. Blackburn*, 777 F.2d 272, 281 (5th Cir. 1985).

Courts in the Fifth Circuit must apply a two-step analysis when reviewing claims of prosecutorial misconduct. *United States v. Wise*, 221 F.3d 140, 152 (5th Cir. 2000); *United States v. Lankford*, 196 F.3d 563, 574 (5th Cir. 1999). First, the court must determine whether the prosecutor made an improper remark. *Wise*, 221 F.3d at 152. "If an improper remark was made, the second step is to evaluate whether the remark affected the substantial rights of the defendant." *Id*. A habeas corpus petitioner "must demonstrate that the misconduct [was] persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks." *Jones*, 864 F.2d at 356; *accord Hogue v. Scott*, 874 F. Supp. 1486, 1533 (N.D. Tex. 1994). Under this test, a petitioner must demonstrate that the comment rendered his trial "fundamentally unfair," by showing "a reasonable probability that the verdict might have been different had the trial been properly conducted." *Rogers*, 848 F.2d at 609 (footnote and citations omitted).

For purposes of federal habeas review under the AEDPA, Greenup's claim of prosecutorial misconduct presents a mixed question of law and fact. *Brazley v. Cain*, 35 F. App'x 390, 2002 WL 760471, at *4 n.4 (5th Cir. Apr. 16, 2002) (citing *United States v. Emueqbunam*, 268 F.3d 377, 403-04 (6th Cir. 2001); *Jones v. Gibson*, 206 F.3d 946, 958 (10th Cir. 2000); *United States v. Noriega*, 117 F.3d 1206, 1218 (11th Cir. 1997); *United States v. Spillone*, 879 F.2d 514, 520 (9th Cir. 1989)).

The transcript reflects that defense counsel's closing argument focused on the lack of evidence as well as D.B.'s credibility.[95]  He argued D.B. never complained of abuse "until he reaches his adolescence in the 7th [grade] and he's having trouble in school and he's in danger of failing and he's got anger issues.  He's threatening to kill a teacher, and he's being suspended . . . That's when the allegations of abuse started.  That's when they start.  You can draw your own conclusions from that, but I think it's pretty clear."[96]  Defense counsel suggested that the allegations were the result of D.B. and his mother's anger towards Greenup due to his failure to provide for them emotionally or financially.[97]   Defense counsel concluded his argument as follows[98]:

> Can you convict a man and send him to prison for the rest of his life when you have unsubstantiated allegations, the facts of which transform and change across time and depending on the situation, details are very different, where a young man who's in a very difficult point in his life, who's full of anger, is disappointed, he had difficulties – you can't send some to prison for the rest of their life just on allegations alone.  And that's all we've got in this case.

---

[95]St. Rec. Vol. 4 of 15, Closing Arguments and Jury Verdict Transcript, pp. 23-36, 6/14/12.

[96]*Id*., at pp. 28-29.

[97]*Id*., at pp. 33-34.

[98]*Id*., at p. 36.

In his rebuttal argument, the prosecutor responded to the defense's argument that D.B.'s allegations and testimony lacked credibility.[99]  In specifically addressing the claim that D.B. was angry or had an ulterior motive for making his allegations and testifying against Greenup, the prosecutor argued that D.B. received nothing for his testimony and stated "[t]his is not something that a 13 year old boy wants to be saddled with."[100]  He then made the statements complained of by Greenup.  As required by Louisiana Code of Criminal Procedure article 774, the prosecutor's rebuttal was "confined to answering the argument of the defendant."

Having reviewed the transcripts of the trial and closing and rebuttal arguments, the Court cannot find that the few unfortunate comments by the prosecutor in rebuttal so infected the trial as a whole that it was rendered fundamentally unfair.  The prosecutor's comments were limited in number and were neither persistent nor pronounced.  Further, the evidence was not insubstantial to have been overwhelmed by the comments.  Rather, the record contains ample evidence apart from the prosecutor's remarks upon which the jury was able to conclude that Greenup was guilty of aggravated rape.  In the overall context of this trial, it cannot be concluded that Greenup's conviction would not have resulted, but for the prosecutor's comments during rebuttal argument.

Other courts also have rejected similar claims and denied federal habeas relief when petitioners asserted comparable, or even arguably more egregious, circumstances.  *Walker v. Quarterman*, No. H-07-3108, 2009 WL 497155, at *20-21 (S.D. Tex. Feb. 26, 2009) (citing *United States v. Hasting*, 461 U.S. 499, 511-12 (1983)); *Cotton v. Cockrell*, 343 F.3d 746, 752 (5th Cir. 2003) (prosecution's comment on defendant's failure to testify was harmless error).  In *Walker*, for example, petitioner argued that the prosecutor made "a grossly improper appeal to the jury's

---

[99]*Id.*, at pp. 37-48.

[100]*Id.*, at p. 46.

emotions and sympathy" when the prosecutor read to the jury during closing argument a poem written by the 14-year-old rape victim and "persuaded the jury to convict on a moral and emotional basis rather than based on their consideration of the relevant evidence." *Id*. at *18-19. The court held that the prosecutor was responding to defense counsel's argument that no sexual assault had occurred, that the response was not misconduct in light of the overwhelming evidence of petitioner's guilt, and that petitioner "failed to show that the prosecutor's comments and reading of the Complainant's poem rendered his trial fundamentally unfair." *Id*. at *20-21.

Similarly, in *Cockrell v. Cockrell*, No. Civ. SA-99-CA-1119-FB, 2003 WL 1906163 (W.D. Tex. Mar. 31, 2003), the prosecutor argued in closing at a murder trial that the defendant has "brought you into this. Don't feel sorry for him. Feel bad about what you have to do. That is okay. But don't feel sorry for this killer and don't let the blood of that last victim be on your hands." *Id*. at *25 & n.181. The court held that the closing argument "did not 'so infect' the petitioner's trial with unfairness as to deny petitioner due process of law" because the court found "no authority holding that a prosecutor's colorful or hyperbolic pleas for law enforcement, which drew no objection at trial from defense counsel, mandate reversal of a conviction supported by overwhelming evidence." *Id*.

Under the circumstances of this case, Greenup has failed to establish that the comments by the prosecutor made in rebuttal denied him due process or improperly impacted the verdict. The denial of relief by the state courts was not contrary to or an unreasonable application of federal constitutional precedent. He is not entitled to habeas corpus relief on this claim.

IX.    <u>**Recommendation**</u>

For the foregoing reasons, it is **RECOMMENDED** that Greenup's petition for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[101]

New Orleans, Louisiana, this 13th day of April, 2018.

_____
        **KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[101]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.